Gregory A. JOHNSON, Plaintiff,

v.

Gilbert H. KLEINKNECHT, Superintendent of Police, St. Louis County, et al., Defendants.

No. 75–333C(2)

United States District Court,
E. D. Missouri, E. D.

Jan. 6, 1977.

C. R. Willis, St. Louis, Mo., for plaintiff.

Thomas W. Wehrle, Clayton, Mo., for defendants.

### MEMORANDUM OPINION

REGAN, District Judge.

This is an action in three counts by a black whose employment as a probationary patrolman by St. Louis County was terminated without notice or hearing several days before he would have graduated from the Greater St. Louis Police Academy. Count I purports to be grounded on a violation of Section 1981, 42 U.S.C., and Count II is based on section 1983, 42 U.S.C. Count III, asserting a Title VII claim, was voluntarily dismissed by plaintiff.

After successfully completing the written examination, oral interviews and the mental and physical examination required of all applicants for such employment, plaintiff was appointed by defendant Kleinknecht, Superintendent of the St. Louis County Police Department, to the position of a St. Louis County probationary police officer, effective July 22, 1974. Probationary patrolmen of the St. Louis County Police Department serve a probationary period of 16 months, have no tenure, and are subject to termination by the Superintendent at any time prior to the expiration of the probationary period, if in his discretion, continued employment of the probationary employee would not be in the best interest of the Department.

Probationary patrolmen are required, at the expense of the County, to attend a 16 week course of instruction at the Greater St. Louis Police Academy. The Academy is an institution utilized by various police departments within the County of St. Louis to comply with the requirements of Section 66.250 RSMo which mandates the completion of a training course with a minimum of 600 hours of instruction within a six-month period after the appointment of a police officer in any police department in a county of the first class having a charter form of government.

Officers attending the Academy remain employees and receive salaries from their respective employing police departments, and are subject to their rules and regulations. Plaintiff was one of seven St. Louis County officers in Recruit Class 43 of the Academy. The other six were white. In addition to the St. Louis County officers receiving training at the Academy, the student roster included police officers from the City of St. Louis and various municipalities of the County.

Although the Academy requires only a 70 per cent cumulative grade point academic average, the St. Louis County Police Department expects its officers to attain an average of not less than 80 per cent. The Academy also requires a score of 630 points out of a possible 900 in its firearms qualifying test. Plaintiff's average academic grade while at the Academy was 77.5 per cent. No other County officer had a grade of less than 80 per cent. With respect to the firearms qualifying test, plaintiff initially scored 624 points, but in a second permitted attempt, some 18 days later, his score was 637 points. The other County officers in Class 43 averaged 795.5, while still other County officers in Class 44 averaged 816 points.

The evidence reflects that plaintiff had been counseled on several occasions concerning his academic grades in a good faith effort to determine why he was not doing

as well as was expected of St. Louis County officers. In each instance, plaintiff promised improvement, indicating that personal problems had affected his performance. We also find that plaintiff was guilty on two occasions of violating Academy regulations, once by bringing hot chocolate into his classroom, and later by sleeping in class.

On October 28, 1974, David M. Furman the Assistant Director of the Bureau of Training and Personnel, prepared a memorandum to defendant Kleinknecht concerning plaintiff and his performance while attending the Academy, recommending that plaintiff be dismissed from the Police Department. Other officials also recommended plaintiff's dismissal. An investigation by the Department's Bureau of Internal Affairs resulted in the same recommendation. Kleinknecht reviewed the matter, and on November 5, 1974, dismissed plaintiff as a probationary patrolman. When plaintiff was terminated, he was told only that he had not successfully completed the probationary period. No specific reason is ever given to any probationary officer who is terminated. We find (and plaintiff does not argue to the contrary) that race was not a factor in Kleinknecht's decision to terminate plaintiff's employment and in the timing of that decision.

In his post-trial memorandum plaintiff expressly concedes that he makes no contention (1) that he was entitled as of right to attend the Academy at the cost of St. Louis County, (2) that defendants could not legitimately expect of its police officers a better performance at the Academy than the minimum passing requirements of that institution, (3) that defendants could not lawfully terminate him for failing to achieve its higher standard of performance, or (4) that defendants were guilty of violating any of his rights before November 5, 1974 or after November 7, 1974. November 5, 1974 is the date on which plaintiff alleges he successfully completed the last examination required by the Academy for graduation, and November 7, 1974 is the date on which plaintiff did not but allegedly would have received his diploma (or certificate of successful completion of the training course) from the Academy but for its alleged policy of dropping from its rolls all students who lose their police department sponsorship.

 There can be no question but that, as stated in *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975), "a state employee who, under state law, or rules promulgated by state officials, has *a legitimate claim of entitlement to continued employment* absent sufficient cause for discharge may demand the procedural protection of due process." So, too, a non-probationary federal employee who may not be discharged without cause has a legitimate claim of entitlement to continued federal employment, a property interest, the deprivation of which could not be accomplished absent notice and a hearing. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 39 L.Ed.2d 15 (1974). And procedural due process also mandates that a welfare recipient who has a statutory right in continued receipt of welfare benefits as long as he maintains the specified qualifications may not be terminated without being afforded a pre-termination hearing. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1974). On the other hand, a nontenured teacher is not entitled to a hearing prior to the nonrenewal of his contract absent a showing of a legitimate claim of entitlement to continued employment or a deprivation of his "liberty" by having been charged with dishonesty or immorality. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the latter case, the purpose of a notice and hearing is to provide the person with an opportunity to clear his name, but not necessarily to retain his employment.

Plaintiff's reliance upon *Goss v. Lopez,* supra, is misplaced. The holding in that case that public school students had a due process right to notice and hearing prior to being temporarily suspended for misconduct was premised on the fact that under the applicable state statutes, the students "plainly had legitimate claims of entitlement to a public education," a property

right "which may not be taken away for misconduct without adherence to the minimum procedures required by [the Due Process Clause]." A further holding in *Goss* was that inasmuch as the misconduct charges, if sustained and recorded, could seriously damage the students' *reputations* as well as interfere with their educational and employment opportunities, "the claimed right of the State to determine unilaterally and without process *whether that misconduct has occurred* immediately collides" with the Due Process Clause's prohibition against arbitrary deprivations of liberty.

■ In the present case, it is not disputed that "a probationary appointment [in the St. Louis County Police Department] is employment with no right of tenure" and that such an employee "may be dismissed at any time [in his probationary period of 16 months] if continued employment will not, in the Superintendent's discretion, be in the best interest of the Department," with no right of appeal. As noted supra, plaintiff makes no contention of entitlement to continued employment. Nor does he contend that notice and hearing were constitutionally mandated before he could be terminated as a probationary patrolman.

There is no question but that in terminating his probationary status, defendants made no charge against plaintiff which "might seriously damage his standing and associations in his community." *Board of Regents v. Roth*, supra. His "good name, reputation, honor or integrity" were not at stake, so that an opportunity to refute such charges was not required. *Harnett v. Ulett*, 466 F.2d 113 (8 Cir. 1972). What plaintiff contends is that he was entitled to notice and hearing before being deprived of his "property right" to a *certificate of qualification from the Academy*, the lack of which he claims deprives him of his "liberty of employability" as a police officer in first class counties of Missouri.

Although plaintiff does not so articulate the point, in effect what he contends is that Kleinknecht should have delayed the implementation of the decision to terminate plaintiff's probationary employment until after the Academy graduation; that is, that plaintiff's interest in obtaining from the *Academy* a certificate incident to graduation outweighs defendant's interest in summarily terminating his employment. But, as stated in *Board of Regents v. Roth*, supra, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake."

Section 66.250 was enacted in the exercise of the police power for the purpose of better assuring quality police protection to the citizens of counties of the first class with a charter form of government. Absent proof of the successful completion of the prescribed training course, newly appointed police officers may not serve or receive compensation for a longer period than six months. The obligation to obtain such training is imposed on the *police officer*.

There is no requirement that the police department in which he is employed on a probationary basis either provide the instruction or keep the police officer on its payroll until the course has been completed. The mere fact that the Academy's policy is to drop from its student roster any officer who has been terminated does not obligate the County to continue an officer on salaried, active status, even for a period of two days, and this is so even if the implementation of the *Academy's* policy might conceivably adversely affect the officer. We add that defendants have no control over the Academy or its practices and policies and they may not be faulted by reason of its post-termination actions.

Plaintiff's opportunities for future employment as a police officer have not been *foreclosed* by the fact he was terminated shortly before he allegedly would otherwise have graduated from the Academy. It must not be overlooked that plaintiff was employed by defendants without having had a course of training. The statute expressly authorizes employment of untrained officers by police departments in counties of the first class with a charter form of government for a period of six months, so that nothing therein prevents plaintiff from

obtaining such employment in another police department, and during the following period of six months plaintiff could either obtain "proof" of the satisfactory (if so) completion of his training course at the Academy or again pursue the required course of instruction.

Assuming that plaintiff has in fact and within the purview of the rules and regulations of the Academy "successfully completed" the training course of instruction, it would appear to us that consistently with Section 66.250, adequate "proof" thereof could be obtained from the Academy, albeit in a form other than a formal certificate of completion. But that is a matter between plaintiff and the *Academy*. Insofar as concerns defendants, plaintiff was not entitled as of right to continued probationary employment until after graduating from the Academy, and such asserted "right" did not come into existence simply because graduation was almost at hand when the decision to terminate was made.

Plaintiff having failed to prove a right of recovery under either Section 1981 or Section 1983, 42 U.S.C., it follows that judgment should be entered in favor of defendants. The foregoing memorandum constitutes our findings of fact and conclusions of law.